UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

JAMES WOODRUFF,                     )
     Plaintiff,                          )
                             )
v.                                  )     Case No. CIV-20-267-P
                             )
ANDREW M. SAUL,                     )
Commissioner of the                 )
Social Security Administration,     )
     Defendant.                         )

**ORDER**

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under the Social Security Act, 42 U.S.C. §§ 423, 1382. Defendant answered the Complaint and filed the administrative record (hereinafter AR___), and the parties briefed the issues. For the following reasons, Defendant's decision is affirmed.

I.    Administrative History and Agency Decision

Plaintiff filed an application for DIB and SSI benefits alleging a disability onset date of February 28, 2017. AR 185-89, 190-91 The Social Security Administration ("SSA") denied the applications initially and on reconsideration. AR 57-66, 67, 68-77, 78, 79-87, 88, 89-97, 98. An Administrative Law Judge ("ALJ") then held an administrative hearing on December 7, 2018, at which Plaintiff and a

vocational expert ("VE") testified. AR 34-56. The ALJ issued a decision denying benefits on March 18, 2019. AR 11-27.

Following the agency's well-established sequential evaluation procedure, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 28, 2017, the alleged onset date. AR 16. At the second step, the ALJ found Plaintiff had severe impairments of cerebral palsy by history, degenerative disc disease, left knee disorder, hypertension, and an unspecified seizure disorder. *Id.* At the third step, the ALJ found these impairments were not *per se* disabling as Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the requirements of a listed impairment. AR 18.

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently and sit and stand or walk for six hours in an eight-hour workday. AR 19. Additionally, the ALJ concluded Plaintiff can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl, but cannot climb ladders, ropes, of scaffolds, and must avoid concentrated exposure to hazards, such as unprotected heights and heavy machinery. *Id.*

At step five, relying on the VE's testimony, the ALJ determined Plaintiff's RFC allowed him to perform his past relevant work as an attorney. AR 26. As a result, the ALJ concluded Plaintiff had not been under a disability, as defined by the

Social Security Act, from February 28, 2017 through the date of the decision. AR 27.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

II.   Issues Raised

On appeal, Plaintiff purports to raise three issues regarding the ALJ's analysis at each phase of step four of the sequential evaluation process. However, his arguments are primarily based upon a contention the ALJ did not properly consider his subjective complaints. Doc. No. 22 ("Pl's Br.") at 3-14. In any event, Plaintiff's first and third issues are based on his contention the ALJ erred by not including more severe limitations in the RFC related to his physical and mental health impairments. *Id.* at 3-8, 11-15. Additionally, Plaintiff asserts the ALJ failed to properly consider the physical demands of his past relevant work. *Id.* at 8-11.

III.   General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1153 (2019); *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Biestek*, 139 S.Ct. at 1154 (quotations omitted). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401, *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1509, 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. *Barnhart v. Walton*, 535 U.S. 212 (2002).

The agency follows a five-step sequential evaluation procedure in resolving the claims of disability applicants. *See* 20 C.F.R. §§ 404.1520(a)(4), (b)-(g), 416.920(a)(4), (b)-(g). "If the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age,

education, and work experience." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "The claimant is entitled to disability benefits only if he is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

IV.   RFC and Plaintiff's Subjective Complaints

Plaintiff contends the ALJ erred in his step four analysis and/or in his determination of Plaintiff's RFC. Plaintiff concedes that at step two, the ALJ determined Plaintiff did not suffer from any severe mental health impairments, but did find he suffered from non-severe impairments of depression disorder and generalized anxiety disorder. AR 17, 25. An ALJ is required to consider any non-severe impairments in determining the RFC. Social Security Ruling, 96-8p, 1996 WL 374184, at *5. Plaintiff contends the ALJ did not consider these non-severe mental impairments when determining the RFC. Pl's Br. at 3, 4. This assertion is inaccurate.

At step two, the ALJ applied the regulations relevant to the analysis of mental impairments. AR 17-18. In discussing the regulations as well as portions of the record relevant to each, the ALJ concluded Plaintiff had only mild limitations in each area of mental functioning. *Id.* As discussed in more detail below, at step four, the ALJ also discussed Plaintiff's consultative psychological examination and the examiner's findings and conclusions, as well as the other limited records related to Plaintiff's mental impairments. AR 22-23, 24, 25, 26. Thus, it is clear the ALJ

considered Plaintiff's non-severe mental health impairments in determining the RFC.

Additionally, Plaintiff argues the ALJ erred in determining the RFC by not including any limitations resulting from cerebral palsy, degenerative disc disease or left knee disorder, and depression. Pl's Br. at 4, 6. In asserting this contention, Plaintiff relies exclusively on his own subjective complaints. Plaintiff reported he has trouble concentrating and understanding due to his depression. Pl's Br. at 13; AR 266. He complains the ALJ relied on simple activities of daily living to find that Plaintiff's mental limitations were non-severe, but never found Plaintiff could regularly perform the "superior requirements for general learning, verbal and numerical abilities required as a lawyer." Pl's Br. at 13 (quotations omitted).

An ALJ is not required to specifically list complex daily activities in order to find a plaintiff can perform more mentally demanding jobs. The ALJ thoroughly reviewed the evidence of record related to Plaintiff's mental impairments, including the medical evidence and Plaintiff's subjective reports. The ALJ noted Plaintiff's testimony that he was receiving mental health treatment. AR 20, 42. The ALJ further noted Plaintiff's report that his mental health interfered with his concentration and his ability to deal with his clients. AR 21, 51-52.

The ALJ discussed Plaintiff's consultative psychological examination on October 25, 2017, with Dr. Gail Poyner. AR 329-30, 334. The ALJ explained:

Claimant drove himself to the evaluation and was noted to have no obvious signs of medical problems or physical limitation. There were some oddities, however, in that the claimant was wearing sunglasses throughout the evaluation and walking slightly bent over and taking small steps. He was observed to have fully functional cognitive skills and displayed normal thinking, communication, mood, affect, and behavior. When asked about prior mental health treatment, he denied having ever been treated or diagnosed with a mental illness. He indicated having seizures, but reported that the last one had occurred five months prior. When asked why he was filing for disability, he indicated having poor concentration and being unable to keep up with work physically. The claimant reported that he quit his last job by mutual agreement because he was always behind, frequently had incomplete work, and took excessive time off for medical issues. However, he also indicated that he had been applying for jobs since quitting. He denied any illicit alcohol or drug abuse. A mental status examination was performed, but no deficits were noted, nor were there any signs of cognitive dysfunction. In contrast, cognitive testing was performed, with the claimant scoring 13 out of 30 (with 26 or higher being considered normal). However, the examiner found these results to be invalid because they were inconsistent with the claimant's "otherwise obvious appropriate cognitive skills," and also inconsistent with his activities of daily living. The examiner observed that "if his [MOCA] score were an accurate representation of his ability to think, he would be considered highly demented," and that the claimant "appeared to be invested in purposely doing poorly on the test." No diagnosis was provided of any specific mental impairment.

AR 22-23. Having reviewed Dr. Poyner's examination findings, the Court notes this is an accurate summation of the same. AR 329-30, 334.

Additionally, the ALJ accurately noted multiple appointments within the medical record in which Plaintiff reported no mental health related limitations, normal mental examinations, and/or denied psychiatric problems. AR 24, 26, 301, 305, 309, 316, 321, 325, 328, 341, 345, 379-80, 402, 433, 437, 448, 454, 507, 516,

528, 531, 534, 538, 541, 544, 547, 550, 553, 556, 560, 563, 567, 570, 594-602, 650

("admits anxiety, denies depression"), 657, 671 (reporting on July 27, 2018, that

"mild depression has been present for greater than six months").

The State agency physicians who reviewed the medical evidence concluded

Plaintiff had no medically determinable mental health impairments. AR 25. Based

on the ALJ's review and analysis of the record, he disagreed with the State agency

reviewing physicians, concluding Plaintiff did suffer from depression and anxiety,

though they were non-severe impairments. *Id.* The ALJ then explained the

following:

> Looking at the numerous medical appointments, they mostly indicate
> that the claimant had . . . normal mood, affect, memory, and
> concentration. . . .
>
>     . . . .
>
> . . . [T]he claimant took a cognitive test wherein the results indicated
> dementia-like symptoms, but the claimant's presentation during the
> remainder of the interview and examination was completely normal and
> wholly inconsistent with the test results, indicative that the claimant had
> purposefully attempted to score low on the test. Furthermore, the
> claimant's self-reported activities of daily living are inconsistent with
> test results indicative of dementia. These are but a few examples of the
> claimant apparently attempting to make his level of impairment appear
> to be much more severe than supported by the medical evidence.
>
> Thus, in terms of the claimant's degree of impairment, reducing the
> occupational base to the [RFC] described above accounts for any
> symptoms reasonably arising from this impairment. Further erosion of
> the occupational base is not warranted by the record.

AR 26 (citations omitted).

Contrary to Plaintiff's repeated assertions, the ALJ clearly and thoroughly considered Plaintiff's mental impairments in determining the RFC. AR 20-26. Plaintiff simply disagrees with the conclusions drawn by the ALJ, but his disagreement is centered on arguments that would impermissibly require this Court to reweigh the evidence. *Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence [to the ALJ's conclusion regarding the severity of the claimant's impairments,] Mr. Alarid is asking us to reweigh the evidence, which we cannot do."); *Lately v. Colvin*, 560 F. App'x. 751, 754 (10th Cir. 2014) (rejecting the plaintiff's attempt to have the court reweigh the evidence); *Taylor v. Astrue*, 266 F. App'x 771, 777 (10th Cir. 2008) ("[I]t is not the province of th[e] court to reweigh the evidence"). The ALJ's analysis of the record related to Plaintiff's mental impairments was proper and his RFC determination in this regard is supported by substantial evidence in the record. Thus, Plaintiff's challenge to the RFC related to his mental impairments is denied.

Plaintiff also complains the ALJ did not include greater physical limitations in the RFC resulting from his cerebral palsy, knee impairment, and seizure problems. Pl's Br. at 6, 8. Although the RFC included some limitations on ramps, stairs, balance, hazards, ladders, ropes, scaffolds and some postural limitations, Plaintiff contends the ALJ erred by not including additional or more severe limitations. Specifically, he relies on his appearance and testimony at the administrative hearing

where he was unable to hold up either hand to take the oath, walked with a cane that he stated was prescribed by Dr. David Ellis, testified that his handwriting is illegible, testified that he suffers petit seizures daily and grand mal seizures one to two times per month, and testified that his cerebral palsy affects the right side of his body.  Pl's Br. at 6 (citing AR 38, 40, 41, 43, 45). Plaintiff argues the ALJ failed to account for these conditions in the RFC by failing to include limitations related to his use of a cane, that he can only use one arm to carry things while standing or walking, and cannot reach and handle in all directions, as required for light and sedentary work. Pl's Br. at 6-7.

As the Commissioner notes, the record does not reflect that Dr. Ellis prescribed a cane for Plaintiff. Additionally, as noted by the ALJ, the record includes consistent notations of a normal gait. AR 23, 25, 301 (gait described as "balanced, upright, and symmetrical"), 305 (same), 507 (coordination and gait normal), 594 (full range of motion noted), 595-602 (same), 608 ("gait abnormality denies"), 610 (same). The ALJ set out that pain management records from 2017 indicate Plaintiff "did display pain upon arising from a seated position and transitioning through the first few steps of ambulation. Otherwise, no abnormalities were noted." AR 22 (citing AR 527). The ALJ explained that there were no further pain management appointments until April 2018, though he also explained Plaintiff's testimony that the lack of treatment was due to lack of insurance after he stopped working. AR 22.

The Court recognizes that the April 2018 record indicates Plaintiff reported significant pain and weakness in his back and left leg, though the record from this visit does not indicate any examination findings. AR 588-89.

Additionally, the ALJ thoroughly discussed the medical record of evidence related to Plaintiff's knee impairment, as well as its related conditions and symptoms, and his subjective reports and daily activities. AR 22-26, 626 (reported exercising daily but also experiencing pain in back and bilateral lower extremity pain, examination showed lower extremities muscles intact and equal bilaterally, no muscle spasms, no loss of sensation), 629 (reported bilateral below the knee pain, examination showed lower extremities muscles intact and equal bilaterally, no muscle spasms, no loss of sensation, negative straight leg raising test), 632 (reported left knee pain, noted painful range of motion in left knee, examination showed lower extremities muscles intact and equal bilaterally, no muscle spasms, no loss of sensation), 640, (reported left below the knee pain, examination showed lower extremities muscles intact and equal bilaterally, no muscle spasms, no loss of sensation, full range of motion), 666 ("motor strength normal upper and lower extremities"), 669 (same), 671 (same), 673 (tenderness on left side of spine but retained full range of motion and negative straight leg testing), 675-76 (range of motion limited due to pain but gait within normal limits and denied gait abnormality), 677 (tenderness on left side of spine but retained full range of motion

and negative straight leg testing), 679 (same), 685-86 (following a fall, reported pain in lower back and left lower extremity, examination showed painful range of motion to left ankle, lower extremities muscles intact and equal bilaterally, no loss of sensation, mild muscle spasms), 688-89 (reported pain in lower back, left leg, and left foot, examination showed lower extremities muscles intact and equal bilaterally, no loss of sensation, no muscle spasms).

The initial State agency reviewing physician found Plaintiff's physical problems would restrict him to light work with some additional restrictions, but the second reviewing physician concluded Plaintiff's physical impairments were non-severe. AR 25. However, the ALJ found the first reviewing physician more persuasive.

> [T]he conclusion that the claimant's physical impairments are severe and would limit him to light work is supported by the evidence that shows degenerative changes to the claimant's lumbar spine and left leg, as well as the indications of occasional mild muscle spasms along the spine. These assessments appear to be more persuasive and consistent with the evidence overall than the conclusion that the claimant's physical impairments are non-severe.

AR 25.

As established, the ALJ thoroughly discussed the medical evidence of record pertaining to Plaintiff's left knee problems and degenerative disc disease. AR 21-26. At best, Plaintiff's argument that the ALJ should have included more severe limitations in the RFC turn on his contention that the evidence could support a

different conclusion. That, however, is not the relevant standard of review on appeal. As previously stated, that a district court might have reached a different result is not a basis for reversal absent a showing that substantial evidence does not support the ALJ's decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

Plaintiff also states that the "ALJ did not even review his seizure log at Step 3." Pl's Br. at 6. In his decision, the ALJ specifically noted that Plaintiff's medical records during the relevant period include no mention of seizures or cerebral palsy. AR 21. The ALJ explained that on June 9, 2017, Plaintiff was hospitalized following a barbiturate drug overdose. AR 22. During his hospitalization, "he was observed to experience a seizure." *Id.* In April 2018, Plaintiff requested a refill of Keppra, an antiepileptic medication, but did not report experiencing seizures or having experienced them recently. As the ALJ noted, it was the first time Plaintiff "indicated having a past medical history of epilepsy of an unspecified type. He was given a new script of Keppra and directed to take it daily." AR 23.

> The claimant submitted a seizure log covering the months of April 2018 through November 2018. It listed six grand mal seizures . . .; most of which reportedly occurred at home, but two of which allegedly happened outside the home. While the claimant indicated that both of these outside-the-home seizures were witnessed, each time he declined medical treatment. The seizure log also indicated that the claimant experienced between 4 and 8 petit mal seizures per month during this period.
>
> . . . .

> [In June 2018,] there was no mention of recurrent or new onset seizures. However, upon examination of the claimant's seizure log, he would have experienced approximately 20 seizures by this point, including 4 grand mal seizures. In contrast, the medical records indicate that the claimant denied any transient loss of consciousness or fainting. Upon examination, he was alert and fully oriented, displayed normal mood and affect, and made good eye contact. In general, no abnormalities were noted upon examination and the claimant continued to deny any current loss of consciousness or fainting.

AR 23, 24 (citations omitted).

In addition to the seizure log and the medical record, the ALJ also noted that while Plaintiff claims to have frequent seizures,

> he also testified at the hearing that he has a drivers [sic] license, drives, and that his license has never been suspended or revoked due to a seizure disorder. Were the claimant's symptoms as severe as alleged, this would not be the case, and there would also be more than a single medically documented seizure in the record when the claimant has alleged experiencing seizures on almost a daily basis. If he were experiencing seizures on almost a daily basis, the evidence would show specific treatment to stop these seizures beyond a simple prescription for Keppra.

AR 26. The Court finds the ALJ's findings and conclusions with regard to Plaintiff's purported seizure disorder, as well as the omission of any limitations in the RFC related to the same, is supported by substantial evidence.

V.    Plaintiff's Past Relevant Work

Plaintiff claims the ALJ failed to adequately consider the demands of his past relevant work as a lawyer, instead delegating this duty to the VE. Pl's Br. at 8-11. At phase two of the step four analysis, an ALJ is "required to assess the physical and

14

mental demands of [a claimant's] past work." *Cochran v. Colvin*, 619 F. App'x 729, 732 (10th Cir. 2015). An ALJ may rely on information obtained from the claimant himself, his employer, or another informed source. *Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013). An ALJ may not "make RFC findings and then [ ] delegate the remaining phases of the step four analysis to the [VE]." *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003). On the other hand, an ALJ "may rely on information supplied by the VE at step four" and "quote[ ] the VE's testimony approvingly[ ] in support of his own findings at phases two and three of the analysis." *Id*.

Here, the VE testified that Plaintiff's past relevant work as a lawyer, Dictionary of Occupational Titles ("DOT") #110.107-010, was defined as sedentary, SVP 8, and the ALJ properly relied on this DOT evidence. AR at 53; *see Bowman v. Astrue*, 511 F.3d 1270, 1273 n.1 (10th Cir. 2008) (It is well established that the agency accepts the definitions in the [DOT] as reliable evidence at step four of the functional demands and job duties of a claimant's past job as it is usually performed in the national economy." (additional brackets and quotations omitted)).  In addition to considering the definitions in the DOT, the ALJ offered a hypothetical involving the exact same limitations as those found in Plaintiff's RFC, and the VE testified that such a person could perform Plaintiff's past job as a lawyer. AR at 53-54. The ALJ's finding that Plaintiff can perform his past relevant work on the basis of this evidence satisfies the ALJ's obligation at phase two of the step four analysis.  *See*

*Best-Willie v. Colvin*, 514 F. App'x 728, 738 (10th Cir. 2013) (holding that the VE's testimony and DOT descriptions of past relevant work supported the finding that the ALJ "obtained information concerning the physical and mental demands of [the claimant's] past relevant work and appropriately relied on the [VE]'s testimony in her decision").

VI.    <u>Conclusion</u>

Based on the foregoing analysis, the decision of the Commissioner is affirmed. Judgment will issue accordingly.

ENTERED this   27th day of   April , 2021.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

16